RAMONA COLMENERO, Plaintiff and Appellant, *v.* EPIFANIO FERNÁNDEZ VANGA ET AL, Defendants and Appellees.

No. 8828. Argued May 16, 1944.—Decided July 10, 1944.

*Daniel Pellón la Fuente* and *Manuel García Cabrera* for appellant. *Dubón & Ochoteco* for appellees.

Mr. Justice De Jesús delivered the opinion of the court.

Aurea Balseiro Dávila died in this city on October 26, 1938, leaving a holographic will executed on June 25 of that same year. At her death, she left no forced heirs. She designated the appellees as her executors, extending the period of the executorship to five years after the date of her death. She provided a large number of legacies, and immediately after them, in the following paragraph of her will, she made some of the legatees her sole and universal heirs, setting forth this provision in the following terms:

"As to the remainder of all my property, rights and actions, both present and future, I designate and appoint as my sole universal heirs my step-son Rafael Vachier Sauble, my sister Mercedes Balseiro Dávila, my nephews José A. Balseiro Ramos, Juan Ramón Balseiro Ramos, and Rafael Balseiro Ramos, and my sister Ana María Balseiro Dávila, share and share alike."

The legacies amounted to $1,499,000. That amount includes the legacies that for the amounts stated after their

names she made to the persons that she instituted as heirs: Rafael Vachier Sauble, $200,000, with preferable character; Mercedes Balseiro Dávila, $100,000; to the nephews of the testator, José A. Balseiro Ramos, Juan Ramón Balseiro Ramos, and Rafael Balseiro Ramos, $200,000 each, the total of the legacies to the heirs amounting to $1,000,000.

Before the expiration of the five years for which the executorship was extended and despite the fact that the estate had not yet been settled; the plaintiff required the executors to pay her money legacy amounting to $40,000. When they refused to make the payment, the plaintiff instituted this suit in the court below on December 2, 1940, praying for a judgment ordering the defendants to pay her legacy either in cash or in property from the estate plus legal interest from the time of the filing of the complaint, plus costs, expenses, and attorneys' fees.

In order to show that the estate had sufficient funds for the payment of her legacy, she alleged that the assets of the estate amounted to $1,124,944.57; that the debts, without including the legacies, amounted to $337,925.68; and that the residue of $787,018.99 was sufficient to pay the legacies which, according to her, because of a certain circumstance to which we shall subsequently refer, had been reduced to $568,000 and that, even after they were paid, a residue of $219,018.99 would be left to be distributed among the heirs.

The defendants answered, opposing plaintiff's contentions, and among other reasons why the complaint should be dismissed, they alleged that said legacies were excessive in the amount of $930,904.94, without including the amount which eventually would have to be paid as inheritance tax.

The case was tried, the complaint dismissed, and costs awarded against the plaintiff.

The inventory made by the executors and admitted in evidence without objection on the part of the defendants disclosed that the assets of the estate amounted to $1,124,944.67,

as alleged by the plaintiff, and that the debts, not including the legacies or what the Treasurer claims as inheritance tax, amounted to $337,925.68.

██ We shall now consider the reduction that the plaintiff makes in the amount of the legacies.

She argues that as the legatees that were instituted heirs accepted the inheritance purely and simply, their condition of heirs makes them responsible for the debts of the estate and at the same time their condition of legatees makes them creditors of the estate and that therefore the legacies of the heirs, because they are at the same time debtors and creditors of the estate, are extinguished by confusion of rights.

Generally, a voluntary heir who accepts the inheritance purely and simply and is at the same time a legatee, runs the risk of losing the inheritance and the legacy and even that of answering with his own property to the necessary extent if the inheritance estate does not cover all the debts. This is so because the heir on accepting the inheritance purely and simply, as a successor of the personality of his ancestor, not only acquires his rights but also assumes his liabilities. To this effect, §957 of the Civil Code provides:

"Through an acceptance, pure and simple, or without benefit of inventory, the heir shall be liable for the charges on the estate, not only with the property of the same, but also with his own."

As Manresa says, commenting upon §1003 of the Spanish Civil Code, identical to §957 of our Code:

"This could be considered unjust, because when nothing is left to the heir, nothing should be left to the legatees. But this has a rational explanation.

"In first place, the heir is free to accept the inheritance in the manner he chooses or not to accept it. If his acceptance is pure, he cannot complain, since he voluntarily contracts the obligations that to that form of acceptance the law attaches." 7 Manresa, Commentaries to the Civil Code, page 392.

The heir can avoid the situation by accepting the inheritance with the benefit of inventory and in this manner he would not be bound to pay the debts and other charges on the inheritance except to the extent of the property inherited. Section 977, Civil Code.

■ The general rule which we have just stated has an exception, which arises out of the express or implied volition of the testator. As prescribed by §624 of the Civil Code in the interpretation of testaments the will of the testator should prevail, and to determine it, attention should not be given solely to the literal meaning of its words, but also to what appears from the context of the will. We examine it therefore to determine if, in accordance with the will of the testator, she makes the heirs responsible with their own legacies for the payment of the other legacies upon their acceptance of the inheritance purely and simply.[1]

In instituting the legacies, the testatrix expresses herself in the following terms:

"(1) I bequeath to my step-son Rafael Vachier Sauble the amount of two hundred thousand dollars, *with the character of preferred legacy*. (2) I bequeath to my sister Mercedes Balseiro Dávila the amount of one hundred thousand dollars. (3) bequeath to my sister Ana María Balseiro Dávila the amount of one hundred thousand dollars, it being my express will as regards this legacy, that my sister Ana María during her life shall dispose only of the rents and usufruct of said amount and that upon her death said one hundred thousand dollars shall pass totally in full ownership to my heirs which I shall hereafter designate, in equal parts. (4) I bequeath to my nephews José A. Balseiro Ramos, Juan Ramón Balseiro Ramos, and Rafael Balseiro Ramos the amount of two hundred thousand dollars to each one of them. [Other legacies follow.]" (Italics ours.)

These legatees are the next of kin of the testatrix: her step-son, her sisters, and nephews. They are the heirs in-

---

[1] It should be kept in mind that although the legatee is a creditor of the estate, his credit is a voluntary debt assumed by the creditor by mere gratuity and therefore upon assuming its payment he can do it with the conditions that he may deem proper to impose.

stituted in the clause immediately following the one referring to the legacies and which starts with the words: "As to the remainder of all my property, rights, and actions."

It could not be the will of the testatrix that the right of these heirs, her closest of kin, among whom is her step-son,[2] should be subjected to those of the other legacies that are not joined to the testatrix by such strong bonds.

Considering the context of the testament, in view of these facts, we are of the opinion that when the testatrix instituted these heirs to the remainder of her property, rights and actions, it was her desire that their hereditary rights should be those that could exist after payment of all the other legacies. See, by analogy, the Judgment of the Supreme Court of Spain of December 19, 1944, cited in appellee's brief, which is transcribed in *Enciclopedia Jurídica Española,* Appendix (1925), Second Volume, page 706.

█ The inventory disclosing that the assets of the inheritance totalled $1,124,944.67, the debts $337,925.68, and the legacies $1,499,000, it is easy to conclude that, independent of what in any event would have to be paid because of the inheritance tax, the excessiveness of the legacies alleged by the defendant does exist, and therefore the legacy of the plaintiff can not be totally paid until the liquidation of the estate, and it not being possible to liquidate it until the definite decision of the litigation pending with regard to it in the Court of Tax Appeals of Puerto Rico, we are of the opinion that the trial court acted in accordance with law in dismissing the complaint.

The judgment is therefore affirmed.

---

[2] The testatrix not only declares as a preferred legacy the one to her step-son, but further expresses in the same will her profound love and great worry for his future when she says:

"I earnestly pray of all my heirs and legatees . . . that very special care be taken and help be given in all the measure of their strength to my step-son Rafael Vachier Sauble, and to him I recommend and from him I ask utmost obedience and respect to his aunts, uncles, and tutors."